## WOOD *et al v.* RATLIFF *et al.*

(Division B.    April 6, 1925.)

[103 So. 356.    No. 24818.]

INJUNCTION.    *Equity will enjoin and punish for contempt, continued trespass, though acts also punishable as crime.*

Equity will enjoin and punish for contempt one who trespasses and damages the property of another, and continues to do so, and threatens further trespass and irreparable injury; the acts constituting a civil wrong, though they are also punishable as a crime.

*Headnote 1.    Injunctions, 32 C. J., Sections 185, 440.

APPEAL from chancery court of Lauderdale county. HON. G. C. TANN, Chancellor.

Suit by J. R. Wood and others against S. A. Ratliff and others. From decree dismissing bill, complainants appeal. Reversed and remanded.

*F. K. Ethridge,* for appellant.

The chancellor erred in holding that the violation of the injunction was a criminal offense, if any, and should be punished as such. The courts have, time without number, punished for the violation of injunctions, especially in timber cases and when the trespass was a mere incident to the enforcement of vested rights.

There is no denial of the absolute title to the Wood farm being in Wood and his family, the answer admits that both farms are in the stock-law district and that Wood has vested rights that have been interfered with and he and his family deprived of the peaceful enjoyment of the fruits of their labor.

The testimony of seven witnesses shows that S. A. Ratliff and Kutcher Ratliff went to the home of J. R. Wood,

engaged in unseemly conduct, trespassed upon his land and upon the peace and quietude of his family, cursed and threatened, abused, scared them and rendered life for them unbearable.

The defendants themselves are the only two witnesses for themselves and they admit every material fact testified to for the plaintiff except they cursed, threatened or trespassed. The learned chancellor, who reminds me of some county justice of the peace trying to split the difference, found that this was true in his decree for he required them to execute a peace bond in the sum of five hundred dollars and required the defendants to pay half the cost.

This case is like *Floyd* v. *Alder,* 96 Miss. 546, a case involving property rights where this court held; "It is true that the appellant may be guilty of a criminal trespass if some of the allegations in the bill are sustained, but these facts are not made the basis of any relief at the hand of a court of equity, but is a mere incident. The real purpose of the bill is to obtain possession of the building in question by compelling the surrender of the key then and in addition to prohibit the appellants from interfering in any way with the completion and use of same by the appellee."

The real purpose of the bill in this case is to secure the quiet and peaceful enjoyment of property rights that are vested in the appellants and that are guaranteed by our Constitution. Will a court of equity, of morals, of conscience, grant a remedy and then forsooth because some ruthless person is violating its solemn writ of prohibition and the criminal law at the same time sit quietly by and say, because in violating my decree you violated the criminal law, I will leave the matter up to the criminal courts.

The court decided in *Munday* v. *Terrall,* 87 Miss. 284, "That a court of equity could and would enjoin criminal trespass where property rights are involved." The holding of the chancellor was directly in conflict with the opinion of this court in *Durham* v. *State,* 52 So. 627,

\

97 Miss. 549. The last error assigned was that the court erred in assessing the appellant Woods with half the cost. We simply say that there is absolutely no justification in the record for the court requiring appellant to pay any part of the costs.

The appellant came into court for relief, proved absolutely he was entitled to relief, the chancellor realized this and so found, in that he held the acts were criminal and should be punished as such, and that the appellees should give a bond to keep the peace. It simply amounted to penalizing a man and his family for appealing to the court for protection and enforcement of their rights.

No brief filed for appellee.

Argued orally by *F. K. Ethridge,* for appellant.

HOLDEN, P. J., delivered the opinion of the court.

The appellant J. R. Wood lived with his family on his place about six miles east of Lauderdale Station, in a stock-law district. The appellee Ratliff and his family lived near by on an adjoining farm. These neighbors had a controversy with reference to the stock of Ratliff trespassing upon the land of appellant Wood, and this bill for an injunction restraining Ratliff from further trespassing upon his land was sued out by appellant Wood, and on a hearing of a citation of appellee Ratliff for contempt, the bill was dismissed upon the ground that—"The violations of the injunction by the defendants on the 16th day of March, 1924, if any, were acts in the nature of violation of the criminal statutes of the state, and as such are punishable in the criminal courts, of the proper jurisdiction, and not in a court of equity."

This excerpt is copied from the written opinion of the chancellor.

The bill for the injunction charged that the Ratliffs had been guilty of various trespasses upon the land of

appellant Wood, had personally assaulted appellant and his family, allowed live stock, such as hogs and goats, etc., to habitually go upon appellant's land and destroy the crops, and that the Ratliffs were threatening the lives of appellant and his family, and threatening to continue further trespasses upon the property of appellant, and to do other irreparable injury to the property of appellant.

After the injunction was issued, the appellant complained to the court that the injunction had been violated by appellee Ratliff, whereupon Ratliff was cited to appear for contempt before the court, and after a hearing of the testimony on the contempt proceedings, the chancellor dismissed the injunction and discharged the appellee, upon the ground, as stated above, that the acts complained of were criminal in their nature and should be punished by the criminal laws instead of by a court of equity. There was one other ground appearing in the decree upon which the chancellor ruled, but we see no relevancy in it and shall not discuss it for that reason.

The sole question before us, then, is whether or not a court of equity will enjoin, and punish for contempt, a person who trespasses and damages the property of another, and who continues to do so, and threatens to further trespass upon the property, where the acts complained of are both criminal and civil wrongs.

We think the case of *Durham v. State*, 97 Miss. 549, 52 So. 627, decides the question in the affirmative. A property owner is entitled to injunctive relief against trespass and threats of future damages and irreparable injury to his property; and this is so notwithstanding the fact that the trespass complained of may also be prosecuted as a criminal offense. The civil rights of the property holder in such case should be protected by the court, even though the act complained of is a public wrong which may be punished by criminal action.

In view of these conclusions, we think the decree of the lower court was error, and it is therefore reversed.

*Reversed and remanded.*

ON MOTION TO CORRECT JUDGMENT AND RETAX COSTS.
MOTION OVERRULED.

(May 25, 1925.)

[104 So. 156.]

CONTEMPT.  *Costs are taxable to defendant, cited for disobedience to remedial writ to protect property rights, where order improperly discharging him is reversed on appeal; "civil proceeding."*
  A contempt proceeding for the protection of property rights or interest· is "civil proceeding" and not criminal proceeding, and, where the court improperly discharges a person cited for disobedience to a remedial writ sued out for the protection of property rights, and such judgment is appealed from and reversed, the defendant is taxable with the costs of the proceeding below and of the appeal.    . ·

*Headnote 1.  Contempt, 13 C. J., Sections 81, 174 (1926 Anno.)

ETHRIDGE, J., delivered the opinion of the court.

In the opinion of the court, rendered in this case on a former day, the judgment of the court below was reversed, and the cause remanded.  It is insisted now that the appellee, Ratliff, could not be taxed with the costs of the appeal in the court below on the hearing of the contempt proceedings because acquitted of the contempt by the chancellor.

The position might be true if the contempt was a criminal proceeding, but in the case before us it is a civil proceeding, to vindicate a civil right and to protect property rights and interests.  Consequently the judgment of the chancellor, adjudging him not guilty of contempt, on being reversed by this court, stands for naught, and the case was remanded for further proceedings to enforce the injunction herein granted.

Where a contempt proceeding is a civil suit for the protection of civil rights, it is governed like other civil cases.  *Millis* v. *State,* 106 Miss. 131, 63 So. 344; *Perry* v. *Pernet,* 165 Ind. 67, 74 N. E. 609, 6 Ann. Cas. 533.

The opinion hereinbefore rendered refers only to the contempt proceeding branch of the case, and does not affect the merits on the main issue of the suit filed, any further than the rule of law announced in the opinion is applicable.

The motion to correct the judgment and retax the costs will be overruled.

*Overruled.*